**MID–SOUTHERN TOYOTA, LTD., Amco Industries, Inc., et al., Appellants,**

**v.**

**BUG'S IMPORTS, INC., Appellee.**

Court of Appeals of Kentucky.

June 9, 1972.

Rehearing Denied Oct. 20, 1972.

Joseph J. Leary, Frankfort, Solomon, Bush, Rosenfeld & Elliott, Chicago, Ill., Lively & Rodes, Danville, for appellants.

James F. Clay, Clay & Clay, Danville, for appellee.

VANCE, Commissioner.

This is the third appearance in this court occasioned by the disputes existing among the litigants. See Mid-Southern Toyota, Ltd. v. Bug's Imports, Inc., Ky., 453 S.W. 2d 544 (1970), and Mid-Southern Toyota, Ltd. v. Pennington, Ky., 458 S.W.2d 776 (1970).

The disputes arose over the interpretation of a "Mutual Letter of Intent" which was the basis of a warehousing franchise granted to Bug's Imports by Mid-Southern and which read as follows:

### "MUTUAL LETTER OF INTENT"

"The point of this agreement between Mid-Southern Toyota, Ltd., Chicago, Illinois, and Floyd Abbott, Jr., president of Bugs Imports, Inc., Danville, Kentucky, is to permit Bugs Imports, Inc., to act as warehousing agent for the Toyota line of automobiles in the state of Kentucky with exceptions as outlined below:

Louisville, Kentucky

Lexington, Kentucky

Elizabethtown, Kentucky

Pleasure Ridge Park, Kentucky

"The duties of Mr. Floyd Abbott, Jr., Bugs Imports, Inc., as warehousing agent for Mid-Southern Toyota, Ltd., will be:—

1. To select dealers in the state of Kentucky to handle the Toyota line of automobiles in return for which Mid-Southern Toyota, Ltd., will give Floyd Abbott, Jr., Bugs Imports, Inc., the right to supply

these dealers with Toyota cars. For his services Mid-Southern Toyota, Ltd., will give special pricing on all Toyota cars invoiced to Bugs Imports, Inc., on the following basis: $50.00 special advertising allowance invoiced per car, plus $50.00 matching amount by Mid-Southern Toyota, Ltd., making a total of $100.00 per car to be reimbursed upon Mid-Southern Toyota, Ltd.'s receipt of payment of drafts on cars invoiced.

In the event that Mid-Southern Toyota, Ltd., directly supplies Toyota cars to one or any of the dealers appointed by Floyd Abbott, Jr., Bugs Imports, Inc., Mid-Southern Toyota, Ltd., will pay Floyd Abbott, Jr., Bugs Imports, Inc., a service commission of $50.00 per unit.

2. Floyd Abbott, Jr., Bugs Imports, Inc., will submit the following to Mid-Southern Toyota, Ltd., upon selection of a dealer to become an authorized Toyota dealer:

A. Three (3) signed copies of the Mid-Southern Toyota, Ltd., franchise agreement.

B. One (1) copy of the Mid-Southern Toyota, Ltd., dealer application form.

C. Payment for parts, warranty data recorder (if needed), and 3′ by 5′ Toyota product sign submitted with the above papers. (See attached minimum price breakdown)

Mid-Southern Toyota, Ltd., reserves the right to reject dealer applications submitted by Floyd Abbott, Jr., Bugs Imports, Inc., for legal and valid reasons.

3. Floyd Abbott, Jr., Bugs Imports, Inc., agrees to stock an adequate supply of Toyota Cars to insure easy access by all dealers appointed to a regular car supply.

Mid-Southern Toyota, Ltd.
/s/ Edward R. Johnson
Vice President—Sales

Mid-Southern Toyota, Ltd., will be wholly responsible as the factory authorized distributor for Toyota cars and parts to supply all dealers selected by Floyd Abbott, Jr., Bugs Imports, Inc., with parts, service assistance, and processing of warranty claims.

"This agreement will run from this date, June 6, 1967, to June 5, 1968, a period of one (1) year. This agreement will be renewed at the end of this period providing Floyd Abbott, Jr., Bugs Imports, Inc., maintains a sales level in the area above outlined equal, percentage-wise, to the sales performance throughout the balance of Mid-Southern Toyota Ltd.'s territory.

"Signed and agreed to this sixth day of June, 1967.

Bugs Imports Inc.
/s/ Floyd Abbott, Jr.
President"

Friction began to develop between the parties in December 1967 when a change of management of Mid-Southern occurred. In December 1968, Mid-Southern refused any further shipment of automobiles to Bug's Imports although it continued to ship automobiles directly to dealers within the franchise area.

The original action brought by Bug's Imports alleged certain breaches of the agreement by Mid-Southern; sought a declaration of rights under the agreement; and demanded injunctive relief compelling compliance with the agreement by Mid-Southern.

Judgment was entered on March 26, 1969. That judgment, as modified by this court on appeal, established these salient points: (1) the mutual letter of intent constituted a binding contract between Mid-Southern and Bug's Imports; (2) the agreement did not continue in perpetuity but was subject to termination by Mid-Southern after a reasonable time; (3) the agreement granted to Bug's Imports exclusive territorial rights; (4) Bug's Imports is entitled to payment from Mid-Southern in the sum of $100.00 for each automobile

delivered to its warehouse by Mid-Southern and $50.00 for each automobile delivered directly to dealers within the franchise area when direct delivery was specified by Bug's Imports. No injunctive relief was granted. Mid-Southern Toyota, Ltd. v. Bug's Imports, Inc., supra.

Following the decision of this court, Bug's Imports moved for a summary judgment and attached to its motion an affidavit as to the number of cars upon which it deemed itself entitled to the $100.00 payment.

Mid-Southern then invoked the original jurisdiction of this court and sought an order of prohibition upon the theory that Bug's Imports was not entitled to summary judgment for recovery of money in a declaratory judgment proceeding devoid of any pleading asserting a claim for such monetary recovery. We denied prohibition upon the ground that remedy by appeal was adequate. Mid-Southern Toyota, Ltd. v. Pennington, supra.

Following denial of prohibition, Bug's Imports amended its pleadings to allege that Mid-Southern had withheld payment of money due to Bug's Imports under the terms of the contract and demanded judgment for payment of all such monies due and further demanded injunctive relief for continuing specific performance of the contract.

Mid-Southern pleaded a number of defenses. Bug's Imports moved to strike all defenses and claimed that Mid-Southern was estopped to present the defenses asserted. The court reserved its ruling upon the question of estoppel to assert defenses but struck upon other grounds all of the defenses except the defense that Bug's Imports had breached the contract and the defense that Bug's Imports had not suffered great or irreparable injury for which there was no adequate remedy at law.

The trial court then determined that Mid-Southern had delivered 946 automobiles directly to dealers in the franchise territory between January 1969 and May 1970 and awarded summary judgment to Bug's Imports for $94,600.00. The judgment also awarded Bug's Imports $6,300.00 which Mid-Southern had withheld from Bug's Imports at the rate of $30.00 per car on 211 cars delivered prior to January 1969. This appeal followed.

The parties have proceeded thus far upon two entirely different theories of the case. Mid-Southern has proceeded upon the theory that its liability, if any at all, is limited solely to damages for breach of contract.

Bug's Imports has not sought any damages for breach of contract but bases its claim entirely for money allegedly due it under the terms of the contract as payment for cars delivered to dealers in the franchise territory. It insists that the contract has not been terminated and cannot be terminated until after the lapse of a reasonable time. What constitutes such a "reasonable time" has not yet been determined. Bug's Imports therefore insists that since the contract has not been terminated, every automobile shipped into the franchise area constitutes performance under the contract and all that remains to be done is to collect the commission due therefor.

This court is persuaded to accept the position advocated by Bug's Imports. In our previous decision we held that the franchise area was exclusive. We likewise held that the provision of the agreement which reduced the payment due to Bug's Imports from $100.00 to $50.00 for cars shipped directly to dealers could not be invoked at the option of Mid-Southern but only at the election of Bug's Imports.

█ It is true that we did not specifically hold that Bug's Imports would be entitled to payment of $100.00 for each car shipped directly to a dealer at Mid-Southern's election, but such was the clear intent of our opinion. Otherwise it would accomplish the ludicrous result that Mid-Southern could ship directly to dealers at its own

option and avoid all payment to Bug's Imports.

Under the terms of the franchise agreement, as this court construes it, Bug's Imparts is entitled to payment of $100.00 for each automobile supplied to a dealer through its warehouse and $100.00 for each automobile delivered by Mid-Southern directly to dealers within the franchise area unless the direct delivery was specified by Bug's Imports, in which event the payment is reduced to $50.00 per automobile.

The judgment entered is erroneous however for the reason that it awarded a recovery to Bug's Imports in summary proceedings at a time when a pleaded defense, which if established by the proof would preclude recovery, remained undisposed of and for the further reason that the "reasonable time" during which the contract could not be terminated was not determined.

The trial court reserved its ruling upon the question of whether Mid-Southern, by reason of the previous judgment, is now estopped to assert the defense of breach of contract by Bug's Imports. Whatever that ruling may be as to the claim for commissions prior to March 1969, it is elementary that the judgment which declared that a binding contract existed on March 26, 1969, could not operate as a bar to the assertion of a breach of contract occurring after that date. Mid-Southern was entitled, at least, to plead and attempt to prove that a breach of contract occurred between March 26, 1969, and June 1970.

Nothing in our previous holding in this case is authority for the proposition that the contract could not have been terminated prior to June 1970. We held only that it could not be terminated until after the lapse of a reasonable time. Without hearing any evidence as to what constituted a "reasonable time" the trial court held that the contract must continue at least until June 1970 and perhaps thereafter. What constitutes a "reasonable time" before which the contract could not be terminated depends upon a number of factors concerning which the parties are entitled to introduce evidence.

In effect, the judgment has awarded a recovery of commissions for all cars delivered into the franchised area up to June 1970 but has left open the possibility that Mid-Southern can establish that the contract was breached or terminated before that date. For this reason the judgment is reversed.

Since the matter must be remanded for further proceedings, we suggest the advisability of concluding the entire litigation in one judgment including a determination of how long the contract must endure before it is subject to termination as well as a determination of all other issues properly presented by the pleadings including the question of whether Bug's Imports is entitled to any relief by way of specific performance.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.